## HALGREN v. WELLING, Secretary of State.

No. 5861. Decided October 3, 1936. (63 P. [2d] 550.)

Final Order December 16, 1936.

18

E. A. *Walton,* of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., *Grover A. Giles,* Deputy Atty. Gen., and *E. A. Rogers,* of Salt Lake City, for defendant.

MOFFAT, Justice.

This cause involves the Initiative and Referendum Law of the State of Utah, and is the second cause involving the procedure under that law to come to this court. The first case was *White* v. *Welling,* 89 Utah 335, 57 P. (2d) 703. None of the issues involved in the instant case were presented in that case. The statute was enacted in 1917 (Laws 1917, c. 56 [Rev. St. 1933, 25-10-1 et seq.]).

The petition filed in this court asks for double relief: First, for a writ of mandamus requiring the defendant Milton H. Welling as Secretary of State to consider, respect, and give effect to certain withdrawal petitions, and to disregard and eliminate from the initiative petition the names of the alleged withdrawing petitioners and to declare the initiative petition "insufficient"; and, second, for a writ of prohibition prohibiting and enjoining the defendant from certifying the proposed law to the county clerks of the state of Utah and from doing anything with respect to causing the proposed law to be placed upon the ballots at the coming election.

The proposed law is sponsored by five petitioners. It is proposed to secure by and through the Initiative and Referendum Law (title 25, c. 10, Rev. St. of Utah 1933) the adoption by the people of the state of Utah of "An Act to amend section 79-6-8, Revised Statutes of Utah, 1933, as amended by chapter 78, Laws of Utah, 1935."

Plaintiff's application in this court raises a number of questions objecting to the form of the documents or petitions filed in the office of the Secretary of State. Some of the objections are also substantive. It has been stipulated by the parties that no question is or will be raised, or objection made, as to the form of the action in this proceeding, nor whether the remedy sought is proper. What is desired, as indicated by the parties to this proceeding, is an interpretation of those parts of the Initiative and Referendum Law relating to the requirements that must be met by initiative petitions as to form, procedure, and substantive matters.

The points raised and argued by both sides pursue the same order and submit the matters upon which they contend. They are the issues raised by a "petition affidavit" or application of plaintiff, an answer and motion of the defendant, and a motion for judgment on the pleadings by the plaintiff. We shall not attempt to discuss them in the order in which counsel argued them. We shall adopt another order of discussion. Counsel submitted nine points as follows: (1) The sufficiency of sponsors' petition. (2) The initiative petition is insufficient both as to form and substance. (3) The proposed law is "nonsense," in that it contains "asterisks, the dagger and the various parentheses and the annotations and underscoring so as to make it unintelligible and uncertain." (4) The petition sheets or petition copies of each petition section are not securely bound. (5) Each of the sheets or pages of the petition copies are not separately verified. (6) The withdrawal petitions should have been respected by the Secretary of State. (7) Sponsors' petition and copies of initiative petition do not

contain the post office addresses and residences of signers of the sponsors' petition or the petition copies. (8) There is a failure of correspondence of petition signers with registration lists; that is, the petition copies do not indicate whether or not the signers are duly registered legal voters. (9) Certain of the certificates made by those who certified them were false and fraudulent.

Points numbered 1, 3, 4, and 5 are largely matters of form. We so regard them. The forms prescribed by the chapter on initiative and referendum are declared by section 25-10-1 15, R. S. Utah 1933, not to be mandatory, and if substantially followed, "the petition shall be sufficient, notwithstanding clerical and merely technical errors." When we include objection numbered 1 in the above statement it is taken to refer only to the formal part of the petition and not to any substantive matters. The same statement is true as to the second objection.

The right of direct legislation is in the people. It is the duty of officers charged with administration matters relating to the Initiative and Referendum Law to make it effective and operative if possible. Technical and restrictive constructions placed upon such laws would tend to defeat the purpose and policies governing the submission of such measures to the people for adoption. With the best of safeguards that can be thrown around the preparation, circulation, assembling, and submitting of petitions relating to the Initiative or Referendum Law, inaccuracies, and at times technical departures from prescribed forms, are likely to occur. The rigid application of technical constructions relating to the law, if made by officers charged with the administration thereof, may effectively defeat the purposes of the law. Officers should interpret the law, if possible, so as to sustain it and make its purposes effective, and bring about the purposes intended by the legislature. As heretofore indicated, the *forms* prescribed are not mandatory, and if they are substantially followed the petition

should be held to be sufficient notwithstanding merely technical errors as to form.

Plaintiff argues that because section 25-10-7, R. S. Utah 1933, requires that the "sponsors" shall sign their names, together with their residences, that a failure to write in full after their names and street numbers, "Salt Lake City, Utah," instead of writing "S. L. C.," as they did, is not a compliance with the law. In signing and indicating their residences, the sponsors wrote their street numbers and after that the abbreviation "S. L. C." That "S. L. C." was used in connection with the street number and was intended to refer to Salt Lake City is sufficiently clear to classify the objection within the category of "clerical or merely technical errors." A letter addressed to "John Doe, 1104 E. 6th St., S. L. C.," would no doubt be delivered. Such address is defective when compared with the required post office address, indicating street number where possible, and place of residence. The purpose of supplying name, post office address, street number, if the residence can be so designated, written opposite the name, is to enable any person desiring to verify the qualifications of the signer of an initiative petition, and determine his identity. If the information given is sufficient to enable a person of ordinary intelligence to find the place of residence and establish the identity of the signer, it should be sufficient, though containing technical or clerical error. Persons sponsoring, circulating, or signing petitions should see to it that addresses, street numbers when required, and places of residence are written in full in order to avoid uncertainty.

Plaintiff charges, objection No. 9, that certain certificates made by officers before whom the signers appeared were false. This is denied. There is no proof in the record of this issue and no way of securing proof upon that matter, except by reference for the purpose of taking testimony. There is nothing in the record to indicate that the certificates as made were either false or fraudulent. As to form, there is no objection to them. This last statement brings

us to an unusual situation presented in this case.

The questions, including those above, sought to be submitted, are presented by plaintiff by an affidavit and petition for a writ of mandamus and prohibition. The defendant answered and admitted some of the allegations and denied some, and moved to strike some from the affidavit. The plaintiff then filed a motion for judgment on the pleadings. The ground stated is that "each and every of the denials of defendant's answer with respect to the allegations of the plaintiff made in paragraphs 5, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 22 and 26 are sham, frivolous, contrary to the record, and only amount to denials of the legal effect of the facts alleged in such paragraphs." In view of the disposition of the case that must be made, we deem it unnecessary to discuss in detail this matter. Some of the denials are contradicted by the record. In some of such matters the record supports the allegations of plaintiff.

The motion to strike was not argued, nor was the motion for judgment on the pleadings. We shall have occasion later to refer to certain of the paragraphs around which the allegations, denials, and motions revolve. Reference will be made to paragraphs 21 and 22 of the affidavit.

Objection numbered 2, above referred to, from some of its aspects may be regarded as one of form, and in so far as formal only a departure from form may not be fatal; yet this objection is of such nature that we think, for the purpose of indicating what the statute contemplates and as an aid in the future, the matter should be separately discussed. Objection numbered 2 in its formal aspects relates to the "sponsors' application for petition copies of a proposed law for submission to the people." The application or sponsors' petition proceeds to set out an application for petition copies of a petition entitled, "An Act to amend section 79-6-8, Revised Statutes of Utah, 1933, as amended by chapter 78, Laws of Utah, 1935." It is then indicated that 250 petition copies will be required. To this the five sponsors' signatures have been attached, and the

document is then duly acknowledged and sworn to as provided by the statute. No reference is made in "sponsors' application for petition copies of the law" to the law that is proposed to be submitted other than by reference to the section proposed to be amended. The initiative petition, which is attached thereto, contains the text of the proposed law in full and the objection made is that because of there being no reference in the sponsors' application to the initiative petition where the proposed law is found, either by attachment or identification reference, that if such practice be permitted renders the petition susceptible of fraudulent withdrawal of the proposed law and the insertion of another, during circulation and re-insertion of the original after signatures have been secured. That such situation may arise is true. There is no charge, however, that any such thing in the instant case was done. It is not good practice. The law should be incorporated in the petition. The objection is not well taken.

Objection numbered 8 arises the question that the county clerks of the respective counties of the state in which petition copies were circulated and filed, and in checking the names of the signers of the initiative petitions with the registration lists the clerks did not indicate on the petitions whether or not the names of the signers thereon were those of duly registered voters. Section 25-10-16, R. S. Utah 1933, provides:

"Each section of the initiative or referendum petition when signed and verified as herein provided shall be delivered to the county clerk of the county in which such section was circulated, and the county clerk shall check the names of the signers against the official registration lists of his county, and *indicate thereon whether or not each name is that of a duly registered voter.*" (Italics supplied.)

This is a matter of more than formal or technical importance. Attached to each section of the petition copies by backing sheets and staples is a printed form. One is attached to each of the 250 petition sections, making up the complete initiative petition. This form reads as follows:

"Record of Petition
"Section No.—
"Received by County Clerk this *19th* day of *June*, 1936.
"*27* Petitioner's signatures were found correct, ————— 193—
"Signed *Vivian Arrowsmith* Clerk of *Daggett* County, Utah. Received, Counted and found *sufficient June 22*, 1936.
"*M. H. Welling*
"Secretary of State of the State of Utah."

(Words and figures in italics indicate blanks filled in.)

On some of the petition sections there are check ($\sqrt{}$) marks in various places; on some cross (X) marks, and on some figures, generally in red or blue pencil. On many of the section copies of the petition there are no marks, no checks, nor anything to "indicate thereon whether ▬ or not each name is that of a duly registered voter." We think the word "check," as used in the part of the law above quoted, means that the county clerk shall *compare* the name of each signer on the petition sheets against the official registration lists of his county for the purpose of determining whether or not the signer is a registered voter. The requirement of the statute is that he shall then "indicate thereon," that is, on the petition section sheets opposite each signature, "whether or not each name is that of a duly registered voter." We think it is apparent the Legislature intended this provision to be mandatory. Unless the county clerks furnish this information to the Secretary of State as required by the statute, the Secretary of State is without the necessary basic information from which he may determine the "Sufficiency" of the petition. A check mark, if properly explained, may indicate that the signer's name has been compared with the registration lists and that the name on the petition section sheets opposite such check is that of a registered voter. Without any explanation, it may show just the reverse. Counsel for plaintiff concedes that where such explained check marks were used that he did not raise the question as to whether or not those so checked were registered voters. It is apparent, however, that where

there was a lack of uniformity or no explanation as to the marks used, it was a matter of guess as to what the various marks were intended to mean. Under these circumstances and also where there were unexplained indications, or indications were absent, as to what the clerk's marks were intended to reveal, the certificate as to the number of legal voters was worthless. We think that the statute is clear that the clerk should indicate by appropriate marks, explained, or by words such as "registered" or "not registered" or the equivalent thereof by abbreviations or otherwise so the Secretary of State can determine from an inspection of the petition copies "whether or not each name is that of a duly registered voter." That such information is necessary becomes clear when compared with that part of the law relating to the duty of the Secretary of State. After providing for the checking and indication of the status of each signer as to registration, or want of it, the respective county clerks are required to transmit the sections circulated in their respective counties to the Secretary of State, "who shall check off from his record, as they are filed, the number of the sections of the petition so filed," *not the number of signers as indicated by the county clerks' certificates.* The county clerks are required to certify that the signers are or are not registered voters. The Secretary of State is to determine how many qualified registered voters have signed the petition—it is a matter of counting qualified registered voters' names on the assembled petition copies.

The act further provides:

"After such petition is filed the secretary of state shall forthwith *cause the number of verified names* appearing on each verified circulation sheet *to be counted,* and, if the number of names so counted equals or exceeds the number of names required by the provisions of this chapter, he shall mark upon the front of the petition the word 'sufficient'; if the names properly signed and verified do not equal or exceed the number so required, he shall mark on the front thereof the word 'insufficient.'" (Italics added.) Rev. St. 1933, 25-10-16.

It is then provided in the event the Secretary of State finds the petition contains the necessary number of qualified signers to determine that it is sufficient. If found sufficient, the law provides what procedure shall be taken. If he finds it insufficient, the law provides what procedure shall be taken. These are important duties imposed upon the Secretary of State and county clerks charged with the administration of the proceedings relating to the Initiative and Referendum Law. If the petition is sufficient and the proper procedure followed, the proposed initiative law goes to the people for their vote for approval or rejection. If the Secretary of State finds it insufficient, it does not go on the ballot for approval or disapproval, but must be referred to the sponsors, and they are given an opportunity to remedy defects if they can be remedied as and within the time provided by law. It is not the petition sections as such that the Secretary of State is required to determine the "sufficiency" or "insufficiency" of, but he is required to count and determine whether or not the number of qualified signers as required by the statute and certified by the county clerks to be registered voters equals or exceeds the number required by statute.

Measured by this standard it was impossible for the Secretary of State to determine from the record here submitted whether or not each name was that of a registered voter. It follows that the Secretary of State could not find from the record submitted to him that the petition as a whole was "sufficient."

It was argued that neither the Secretary of State nor the court could go behind the certificates of the county clerks as to the number of duly registered voters. Had the county clerks certified to the Secretary of State what the statute required they should certify, in the absence of a direct attack for fraud or falsity, the position of counsel might be correct. The county clerks did not certify what the statute requires them to certify. The number of petition signatures "found correct" did not determine whether or not

they were actually registered voters. The certificate merely said: "———— petitioners signatures were found correct." No statement is made nor attempted to be made that *each* name on the attached initiative petition is or is not that of a duly registered voter. No doubt the Legislature intended to provide specifically that only "duly registered voters" were entitled to sign or be counted upon initiative petitions.

The secretary was without the necessary information and therefore without jurisdiction to say that he had "received, counted, and found sufficient" the number of qualified signers on the initiative petition as a whole. The names could be counted, but it could not be determined whether they were qualified signers. Only qualified signers make a "sufficient" petition.

Objection No. 6 raises an issue upon the withdrawal petitions. Plaintiff contends that the Secretary of State should have "respected" the withdrawal petitions or the request of the signers of the withdrawal petitions to withdraw. Plaintiff alleges that

"on or about the time of the lodging of the aforesaid papers and petitions with said defendant a large number, to wit, 9,092 persons who had signed or who purported to have signed the said petition, in writing over their signatures and verified by affidavit, petitioned to withdraw their names from the aforesaid original petition and filed such written withdrawals with said defendant and all prior to any action had or taken by said defendant, touching the sufficiency or insufficiency of said petition and the said defendant wrongfully refused to respect said withdrawal petitions and counted for said petition such withdrawing persons without which counting said original petition would have been insufficient as to number of petitioners and would have been so held by said defendant."

The foregoing statement is denied by the answer, qualifiedly admitted in the argument, and attacked on the ground that the formal acknowledgment or execution of the withdrawing petitions were not executed with the same formality as that with which the initiative petitions were acknowledged and executed.

The right of a petitioner to withdraw and the time within which a signer may do so is clearly stated in a recent Oklahoma Case, In re *Initiative Petition No. 2, City of Chandler*, 170 Okl. 507, 41 P. (2d) 101, 102, where the cases have been collected. The court says:

"No authority has been found which denies to a petitioner the right to withdraw his name while the petition is being circulated and before it has been presented to the person or body with whom it is required to be filed. Neither do any of the authorities recognize the right of a petitioner to withdraw his name from a petition after it has been finally acted upon and the prayer thereof has been granted by the person or body who is required to act upon it. *Coghlan* v. *Cuskelly* (1932) 62 N. D. 275, 244 N. W. 39.

"In *Uhl* v. *Collins*, 217 Cal. 1, 17 P. (2d) 99, 85 A. L. R. 1370, it was held the signers of an initiative petition might withdraw their names therefrom before filing of the petition, but not thereafter; that case followed the rule in California, *Beecham* v. *Burns* (1917) 34 Cal. App. 754, 168 P. 1058, and in Nevada, *State ex rel. Matzdorf* v. *Scott* (1930) 52 Nev. 216, 285 P. 511; *Id.;* 52 Nev. 232, 286 P. 119; and in North Dakota, *Coghlan* v. *Cuskelly*, 62 N. D. 275, 244 N. W. 39; and in New Jersey, *Ford* v. *Gilbert*, 89 N. J. Law, 482, 99 A. 621; and in Washington, *State ex rel. Harris* v. *Hinkle*, 130 Wash. 419, 227 P. 861.

"But this court is committed to the doctrine, in the absence of statute, which permits withdrawal after filing a petition and before action thereon is taken.

"Such is the rule in West Virginia, *State ex rel. Noyes* v. *Lane*, 89 W. Va. 744, 110 S. E. 180; and Kansas, *Hay* v. *Dorn*, 93 Kan. 392, 144 P. 235; and Nebraska, *Ray* v. *Colby & Tenney*, 5 Neb. (Unof.) 151, 97 N. W. 591; and Missouri, *Dagley* v. *McIndoe*, 190 Mo. App. 166, 176 S. W. 243. See, also, *State ex rel. Mohr* v. *Seattle*, 59 Wash. 68, 109 P. 309, and *Rominger* v. *Nellor*, 97 Wash. 693, 167 P. 57; *Territory of N. M. ex rel. Stockard* v. *City of Roswell*, 16 N. M. 340, 117 P. 846, 35 L. R. A. (N. S.) 1113. See, also, Annotation, 92 A. L. R. page 1513."

In the case of *Salt Lake & Utah R. R. Co. et al.* v. *Payson City et al.*, 66 Utah 521, 244 P. 138, 140, involving the right of an abutting property owner to withdraw his signature or protest, or his right to object to a special improvement proposal, this court, after citing a number of cases, said:

"An examination of these authorities will indicate that courts under statutes very similar to ours have generally held that a protestant

has the right to withdraw his protest at any time before the expiration of the time for filing the same, and that by so doing the municipality acquires jurisdiction to make the improvement."

It will be observed that the procedure in a special improvement proceeding is just the reverse of that in an initiative and referendum proceeding. In the special improvement matter the proposal is that of city officers and the proposal carries unless protested. In the initiative and referendum procedure the petition fails unless a sufficient number of qualified voters have signed as required by law. The question is: Has a qualified signer the right to withdraw from the petition after signature and at what time may the withdrawal be made?

In some cases the matter of protest or withdrawal is a matter of statutory regulation. There is no provision in the Initiative and Referendum Law of the State of Utah relating to the withdrawal of names from a petition after it has been once signed. There is no substantial ■ reason why a person who has once signed a petition may not, at any time before the petition has been acted upon, withdraw his name, and if timely done, his name should not be counted. There is a division in the authorities as to whether the withdrawal must be made before the petition is filed or before it has been acted upon. The weight of authority is that the withdrawal may be made at any time before the petition has been acted upon. The questions of the right of withdrawal and timeliness thereof were conceded by defendant's counsel. The issue was shifted to the question as to the form of withdrawal.

It is maintained by defendant's counsel that a person having once signed an initiative petition may not withdraw his name except by a document executed with the same formality and sanctity as that of the petition which he has signed. That is, the withdrawal petition must import the same formal verity as the petition from which he desires to withdraw. The case of *State* v. *Sullivan*, 283 Mo. 546, 224 S. W. 327, 339, is cited as authority for this last proposition.

That is the only case cited which seems to bear directly on the subject and we have not been able to find any further authority. Speaking of the formal verity of the original petition, the Missouri court said:

"The very purpose of the statute in requiring this formality [that each sheet of the petition should bear the affidavit of the circulator that the signers had signed in his presence] was to obviate fraud. To get off of such a petition the action of the signer should be at least as formal. His request should at least be verified by his affidavit before some officer. This to the end that the secretary of state might know that the signature to the request was genuine. A mere postal card or letter purporting to be signed by a signer of the petition is not sufficient. Such course would open wide the gates for fraud."

In order to become an effective signer of an initiative petition, a signer must under the statute, be "a legal voter" (section 25-10-8). The county clerk must indicate on the petition "whether or not each name is that of a duly registered voter" (section 25-10-16). There shall be written opposite his name on the same line the post office address or street number, if the residence of the signer can be so designated (section 25-10-8). Some of these are legal requirements going to the question of quali- fication to sign; some of them are for information and identity. Granted the fundamental right of a petitioner to withdraw from a petition at any time before the petition has been acted upon, it would seem to follow, there being no prescribed requirement to the contrary, that the estab- lishment of identity of the signer with that of the party indicating his withdrawal, should be sufficient. Timely personal appearance with the request made to the proper officer, board, or individual with identity established either by personal knowledge or by proof by one familiar with the facts should be sufficient to establish the identity. Written withdrawal accompanied by proof of identity by affidavit either of the signer himself or some one who knows of the identity of the signatures of the person should be sufficient. His place of residence, street number if it can

be so designated, and address, is furnished by the initiative petition. We are not attempting to state all of the ways or means whereby the identity of the signer may be established. An informally signed postal card or letter, as indicated by the Missouri court, if held sufficient would open the gates to fraud. We think the statement of the Missouri court, although dictum, is correct under the circumstances. After the time for filing petitions had expired, and after the petitions had been filed with the Secretary of State, a number of signers indicated their purpose to withdraw. Postal cards were sent out by relator and plaintiff. Some were directed to the Secretary of State, some to named persons when the postal cards were returned.

The important matter to be determined, when a signer of such petition desires to withdraw his name from the petition, is that of identity. Knowledge on the part of the officer sufficient to establish identity of the signer with certainty should be sufficient and meet the requirements. In the instant case we think the verification on the withdrawal petitions meet the requirements indicated by the court in the Missouri case.

The verification on the withdrawal petition is in the following form:

"State of Utah
"County of ..................
"..................being first duly sworn, deposes and says: He is a citizen of the State of Utah, over the age of twenty two years; he circulated the within petition. All of the names which appear on this sheet were signed by the persons who professed to be the persons whose names appear thereon, and each of them signed his name thereto in my presence; I believe that each has signed his name and written his post office address and residence correctly.
 "..................
"Subscribed and sworn to by ......................before me this ..................... day of .............. 1936.
 "......................
 "Notary Public
 "Residing at ............ Utah"
"My commission expires ..................... ....."

For purpose of comparison the verification on the initiative petition sheets is in the following form:

"State of Utah
"County of .................. ss.
 "I, .................... of .................. hereby certify that all the names which appear on this sheet were signed by persons who professed to be the persons whose names appear thereon, and each of them signed his name thereto in my presence; I believe that each has signed his name, and written his postoffice address and residence correctly, and that each signer is a legal voter of the State of Utah.
 " ......................
 "Notary public or other official title."

The affidavit or petition of the plaintiff charges that names have been considered and counted by the defendant, the signing of which did not take place in the presence of the person who appears to have certified to the particular and various circulation sheets, and that the certificates were and are false and fraudulent, and that the sheets thus charged to be falsely and fraudulently certified, if eliminated, would be sufficient to reduce the number of names or signatures below the number required by law. This is an allegation denied by the answer of the defendant, which raises an issue of fact that cannot be determined from an inspection of the record. This issue is discussed under the heading relating to objection No. 9. If such charge be true, it could be determined only by a reference or an action filed in the district court.

This brings us to the only remaining issue. Objection No. 7 charges a want of post office addresses and residence of the purported signers of the petition. This matter is set forth in paragraphs 21 and 22 of the affidavit and petition of the plaintiff and reads as follows:

"21. The said defendant has treated the said petition as containing 23,116 signatures of electors, and petitioner states that included in said particular 23,116 there are many thousands of names and parts of names, and sufficient in number if rejected to invalidate said petition with respect to number required, which do not and did not corres-

pond with the official registration lists with which under the law they were required to be checked.

"22. With respect to the said 23,116 names or parts of names and purported signatures which the said defendant has used as a basis of his approval of said petition, approximately 6000 thereof were not and are not accompanied as required by law or at all with the postoffice addresses and residences of such purported signers of said petition, and if such names or parts of names or signatures were rejected said petition on its face would be wholly insufficient for want of the required percentage of electors, and the same would be reduced below the number 20,566."

We think the position taken by plaintiff as to the fatal consequences incident to the omission of post office addresses and places of residence is sound. Defendant denied the allegations of both paragraphs above quoted █ and moved to strike paragraph 21, but apparently abandoned the motion as it was not argued. With respect to paragraph 22, it stands as denied by the answer.

The record discloses many hundreds of names have no places of residence, street addresses, or post office addresses as required by the statute. In some instances the space on the same line after the name and provided for that information is blank; in others the street number only appears; in others there are ditto marks, the name of the town only, or street address without the name of the city or town appearing above the ditto marks. Whether or not there are 6,000 blank spaces after the names, only an examination of each sheet constituting the whole initiative petition can determine. Aside from the blank spaces there are many more containing no post office addresses or places of residence, street number only being indicated. These do not fulfill the requirements of the statute.

A majority of the court is of the opinion that ditto marks, being well recognized and defined and generally understood to mean "the same as above," should be recognized and given effect; the ditto marks to be regarded as the equivalent of the writing for which they stand, and █ no more. 18 C. J. 1404. The writer of this opinion

takes the position that because the statute in terms clear and explicit provides "the first column" of the circulation sheets "shall be for the purpose of containing the signatures," and "the second column * * * shall be the space upon which shall be placed the post office addresses of the signers together with the street numbers, if the residence of the *signer* can be so designated, and the address of such *signer shall be written* opposite his name on the same line" (italics added), the statute should be followed, and following it requires a *writing* of the information required by the statute. To hold otherwise opens wide the opportunity for fraud in view of the fact that the circulation sheets pass from hand to hand of persons interested only in securing the necessary number of names. County clerks are not required to check addresses. Neither is the Secretary of State. Interested citizens may be sent on fishing expeditions to find registered voters or places of residence by the neglect of a circulator to follow the law and by another adding ditto marks to make up the deficiency and make the petition on its face appear sufficient. I yield, however, to the opinion of my brethren of the court in so far as the decision of this case is concerned. All agree, however, in view of the statute, that it is better to follow the statute and write in what is required.

Section 25-10-1, R. S. 1933, relating to initiative and referendum petitions, in part provides:

"that in order to make any such petition mandatory a majority of all the counties of the state must each furnish *signatures of legal* voters not less in number than the percentages herein required." (Italics added.)

Section 25-10-3, provides:

"Upon the presentation to the secretary of state, at any time not less than four months before any general election, of an initiative petition, signed as herein provided by legal voters equal in number to ten per cent of all the votes cast for all candidates for governor at the next preceding general election at which a governor was elected, proposing a law set forth therein, the secretary of state shall submit the

law so proposed to a vote of the people at the next ensuing general election."

Section 25-10-8 contains the following pertinent language referring to the circulation sheets, providing its form and requirement for signatures:

"The first column shall be three and one-half inches in width, measured from the left edge of the sheet, and shall be for the purpose of containing the signatures. The second column shall encompass the remainder of the width of the sheet, and shall be the space on which shall be placed the postoffice addresses of the signers, together with the street number, if the residence of a signer can be so designated, and the address of such signer shall be written opposite his name on the same line."

In the same section it is further provided that it shall be a felony for any one to sign an initiative and referendum petition with any other name than his own or knowingly sign his name more than once for the same measure or sign such petition when he knows he is not a legal voter. And in the same section it is provided that the officer who secures or acknowledges the circulation sheets shall certify that all of the names which appear on each sheet were signed by the persons who profess to be the persons whose names appear thereon and that each of them signed in his presence, and, further, that he believed that each signer had signed his name and *"written his post-office address and residence correctly."*

The Legislature has provided in language clear and unmistakable that the post office addresses of the signers together with the street number, if the residence of the signer can be so designated, and the address of such signer shall be written opposite his name on the same line. There is no opportunity to mistake the meaning of the legislative pronouncement on that particular matter. A number of cases have been cited relative to the question of the requirement of post office addresses and other matters in connection with the signatures of signers of initiative and referendum petitions. Statutes vary so greatly that a case construing

one statute may or may not be of assistance in considering another. The provisions of the South Dakota statute in many respects are like our own. The South Dakota statute, Rev. Code of S. D. 1919, § 5073, provided, among other things, that "the place of residence, business and postoffice address of a petitioner may be indicated by ditto marks, if they are the same as those last written above his signature." In discussing that provision the South Dakota court, in the case of *O'Brien* v. *Pyle*, 51 S. D. 385, 214 N. W. 623, 626, said:

"In many cases it appears from the testimony that the signer did not write in his own handwriting, his residence, business, post office address, and date of signing, or some of them. In addition to those instances to which attention was called in the testimony, there are hundreds of instances where the most casual inspection shows that the signer did not fill out the other data. The difference in handwriting between that of the signature and of the other data is clearly apparent, even to a nonexpert in handwriting. Of course such signatures cannot be counted because the law requires the signer to do the whole job himself. *Harris* v. *King*, 21 S. D. 47, 109 N. W. 644; *Lucas* v. *Ringsrud*, 3 S. D. 355, 53 N. W. 426. No one is authorized by law to doctor up a sick petition."

In the case of *Maycock* v. *Kerr*, 216 Cal. 171, 13 P. (2d) 717, 718, the California court, in discussing the refusal of the clerk to accept an initiative petition wherein a writ of mandamus was sought to require him to do so, said:

"We are of the opinion that the respondent has properly refused to examine the petition and to certify the names thereon, when such precinct numbers do not appear on the face of the petition. The Constitution expressly provides in reference to referendum and initiative petitions (article 4, § 1) that 'each signer shall add to his signature his place of residence, giving the street and number if such exist. *His election precinct shall also appear on the paper after his name.* * * * This section is selfexecuting, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved.' Thus the Constitution itself provides that the precinct numbers must appear on the petition, and this must necessarily mean that such precinct numbers must appear on the petition at the time the petition is presented to the registrar of voters."

The Colorado court, in the case of *Haraway et al.* v. *Armstrong, Secretary of State, et al.,* 95 Colo. 398, 36 P. (2d) 456, 457, in discussing the case of *O'Brien* v. *Pyle,* supra, had the following to say:

"We think that since neither the Constitution nor statute specifically requires the signer to add his address and date of signing, such additions, although preferably done by the petitioner, may be by another. *O'Brien* v. *Pyle,* 51 S. D. 385, 214 N. W. 623, cited to the contrary, is based on the statute of that state, which in terms requires the signer to make such additions in his own handwriting. The purpose of the required data, as we perceive, is that those interested in protesting may be apprised of that which will enable them conveniently to check the petition."

Our statute in terms requires the signer to place his post office address together with the street number, if the residence can be so designated on the same line opposite his name and that it shall be written. The provision does not specifically say that it shall be written by ▆ the signer, but we think the implication from the statute to that effect is clear. It should be written personally or under his authority. In the case of *State ex rel. Freeze* v. *Taylor et al.,* 90 Mont. 439, 4 P. (2d) 479, some of the questions presented herein, but under different statutes, were considered by the Montana court. In that case the elector was required to indicate with his name his place of residence by street and number or other description sufficient to identify the place, and it was argued that such provisions had not been complied with where ditto marks had been used by an elector who had signed his name. The court held that the ditto marks showing residence and the other matters required by the statute were sufficient compliance with the statute, citing the case of *Wilson* v. *Bartlett,* 7 Idaho 271, 62 P. 416. The Idaho case and others are referred to in the case of *Ahrens* v. *Kerby,* 44 Ariz. 269, 337, 37 P. (2d) 375. The Arizona case holds that a provision that the date on which a signer attaches his name to a petition must appear thereon as required. The reason

given for the requirement is that those interested in checking the sufficiency of the petition might be able to use the registration as a guide. Date of registration in that case was required by constitutional provision.

The record discloses that the petition copies or initiative petitions were insufficient in some very important particulars, as follows:

First. The initiative petitions or petition copies failed to show that the purported signers were registered voters. The county clerks failed to indicate whether or not *each name* is that of a duly registered voter. This is required by the statute in plain and unmistakable terms. The petition should not be permitted to fail, however, because of the failure of an officer to perform a duty required by statute, but this defect affects the power or jurisdiction of the Secretary of State to determine the "sufficiency" of the petition.

Second. Those persons who had filed duly verified petitions to withdraw their names before the Secretary of State had acted upon the petition as to its sufficiency should be permitted to do so, and their names should not be counted as petitioners.

Third. No name signed to the petition that is not followed on the same line with the "post office address of each signer together with street and number if the residence of the signer can be so designated" in writing, or the equivalent thereof, should be counted.

It is therefore ordered that the Secretary of State demand that the county clerks of the respective counties indicate on the petition copies whether or not each signer is a duly registered voter. It is further ordered that the Secretary of State give effect to the withdrawal petitions filed herein and eliminate from the initiative petitions the signers of the withdrawal petitions whose identity is established as signers of the initiative petition. It is further ordered that the Secretary of State eliminate from such initiative petition the names of those signers after whose names, and on the same line, no post office address appears, also those

after whose name no street address appears, if the residence as shown by the post office address can be so designated. It is further ordered that when the Secretary of State has ascertained the number of names on said initiative petition, he shall indicate to this court whether or not the number of qualified signers is "sufficient" and the number thereof.

This court retains jurisdiction of this matter to make such further order as may be necessary in the premises.

ELIAS HANSEN, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

WOLFE, Justice (concurring in part, dissenting in part).

I concur in the result on the ground that the proper certifications by the county clerks did not appear on the petition sections. I also agree that the most specific address possible should appear opposite the signature of the signer. This is to permit the clerk to check with the registration lists. The Legislature did not require the voting precinct to be filled in for the simple reason that it realized that many signers would not remember their voting precinct, but each would know his address. Thus the clerk, from the address, could trace the proper registration book in which the signer's name should appear. But I see nothing in the law which requires us by express language or implication to construe it to the effect that such address must be written in by the signer himself. The law does not say that "each signer must write his name *and address*"; it says "the address of such signer *shall be written* opposite his name on the same line," thus seemingly leaving it open to some other than the signer to do so. I do not think the slight implication that the signer himself must write in his address which arises from the words contained in section 25-10-8, reading that the acknowledging officer must certify that the signer has signed his name and "written his post office address and residence correctly," is strong

enough to overcome the reasoning which tells us that such would be a useless requirement. If the address appears at all either by some one else writing it in or by ditto marks, it is sufficient to give the clerk or any other citizen the information he needs to make the check. That is the real purpose of requiring the address of the voter. There may be other purposes but they are all served by the appearance of the address regardless of who writes it in. I think it would be preferable for the signer to do so. It insures likelihood of more accuracy and one who signs and runs away is more likely to have been more casual than he who adds an address in his own handwriting; and carelessness in these matters should be discouraged. It is somewhat likely that the withdrawers were much too casual in the beginning, but I do not see that the statute requires the address to be added by the signer.

Nor can I agree with the holding that the signers of the circulation sheets may withdraw any time before the Secretary of State has acted on the petition, i. e., any time before he marks it as sufficient or insufficient. I think the line of cases represented by *Uhl* v. *Collins*, 217 Cal. 1, 17 P. (2d) 99, 85 A. L. R. 1370, represent the better holdings. The law is silent regarding the right to withdraw. This leaves us free to adopt a rule regarding withdrawals which will permit the law to work. The rule announced by the opinion of the court, it appears, works a practical nullification of the law. The decision in the beginning pays unctuous homage to the court's obligation to construe laws so they may be workable wherever possible. Says the opinion:

"Officers should interpret the law, if possible, so as to sustain it and make its purposes effective, and bring about the purposes intended by the legislature."

The opinion ends by laying down a rule not even involved in construction, which practically makes the law useless. Initiating a law under this ruling is now too hazardous for anyone

to try it. In this case the proponents of the petition for initiation procured considerably more names than the irreducible minimum required by statute. While the clerks of the different counties were checking over the names, the opponents of the proposed law were busy procuring withdrawals. By the time the statement of withdrawals and the certified petitions reach the Secretary of State, and are checked up it would be ordinarily too late to supply the deficiency. No one will now hazard the effort, time, and expense to obtain names only to find that what has been done can be quickly undone by opponents of the proposed law. Moreover, the task of checking the withdrawals from each county against the signatures from each county is one of considerable magnitude requiring extra clerical help and much time and effort. There being nothing in the law respecting withdrawals, this court was free to lay down a rule which would have permitted the law to work.

If any withdrawing of signatures is to be permitted, the question presented is: Where is the point of time beyond which a signer should not be permitted to withdraw his name? The practical answer is: "At such time after which much effort would be expended by the county clerks and the effort of the circulators of the petition virtually nullified." A signer of a petition should have some responsibility for the act of affixation. It is common knowledge that most people can be persuaded to sign almost any petition and equally as easily persuaded to withdraw, and perhaps as easily persuaded to again sign. He who affixes his signature had better understand that he at that time does it for better or for worse, but that at all events if he has been misled or concludes after mature thought, that he made a mistake, let him look up the circulator who procured his signature and ask to erase it, and if that is refused file with the clerk his desire to remove it before the clerk begins the arduous work of checking with the registration lists. When the clerk begins his work of checking, if not at the time the petition is filed with him, what is

equivalent to the satute of limitations for the withdrawal of a signature has run.

The Initiative and Referendum Act provided for a certain method of getting a proposed law on the ballots. It did not intend to make the process one of a running haphazard debate between proponents and opponents of the proposed measure directed to the signers, the winner in that debate probably being the side which had time to get in the last word. After the Secretary of State goes over all the names certified as proper signers by the county clerks, he is compelled to go all over it again and eliminate those withdrawing and after that the proponents, if they have time, fill up the deficiency in names and these again must go to the county clerks. Signers, after all, do not pass the law; they only serve to initiate it. And this initiation should be complete when the required number of qualified signers are on the petition sections reaching the offices of the county clerks. The qualified signers should not be able to "uninitiate" the proposed act by withdrawing after their names come to the county clerk. It appears to me that this view is more in keeping with the case of *Salt Lake & Utah R. Co.* v. *Payson City,* cited in the court's opinion. The effect of that ruling was to allow a person who sought to defeat a proposed improvement to withdraw the protest which might serve to defeat it. The holding in this case is exactly the reverse. It permits those whose signatures served to aid in initiating the proposed law to defeat that initiation by withdrawing their names. If those who petitioned for the improvement were allowed to withdraw their names after initiating it before the municipal authorities had acted on it there would be more of a parallel.

The instant case illustrates concretely very well what I have said in the abstract. The proponents of this petition labored hard and obtained originally over 32,000 names. This was whittled down by strict comparison of the clerks, throwing out names even for the difference of a letter, to over 23,000. Then the opponents busy themselves. They

have the names and addresses. They persuade more than 9,000 signers that they have been misled. Perhaps, if the proponents had another opportunity to talk to these signers, they could persuade them that the opponents had misled them in their arguments in favor of withdrawing names. It has become a running uncontrolled debate with he who gets in the last word winning. Let him who appends his name think first and sign afterward. Signers should not be encouraged to think that if they sign unwisely they may easily withdraw. The opponents have their opportunity at election time. If the law is an unwise one, the electorate should repudiate it. Those who wished to withdraw may vote against it. In this case—in any case—where the opponents are permitted to file withdrawal petitions it is unfair and hazardous to the proponents. No one can afford to take the risk of initiating a law if the opponents may follow them stealthily from behind and undo all that has been done. This decision plays havoc with the law.

For the above reasons I can only concur in the result on the ground stated.

### FINAL ORDER.

MOFFAT, Justice.

An answer and return has been filed in this cause by the defendant, wherein it is represented that the Secretary of State was unable to comply with the order heretofore made herein on October 3, 1936, requiring him to demand that the county clerks of the respective counties indicate on the petition copies whether or not each signer is a duly registered voter; to give effect to the withdrawal petitions and eliminate from the initiative petitions, the signers of the withdrawal petitions whose identity is established as signers of the initiative petition; and to eliminate the names of the signers after whose names, and on the same line, no post office address appears; also those after whose name no street address appears, if the resi-

dence as shown by the post office address can be so designated; for the reason that there was not sufficient time to comply with the order between the date the same was entered and the date the defendant was required to certify the proposed amendments to the respective county clerks of the state.

The defendant is therefore relieved from further proceedings relating to the order heretofore made. The writ is therefore made permanent. Such is the order.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and WOLFE, JJ., concur.