SIMONS v. MONSON, Secretary of State.

No. 6067. Decided September 27, 1938. (83 P. 2d 266.)

*LeGrande A. Carlston,* of Salt Lake City, and *B. H. Jones,* of Brigham, for plaintiff.

*Joseph Chez,* Attorney General, and *S. D. Huffaker* and *Grover A. Giles,* Deputy Attys. Gen., for defendant.

MOFFAT, Justice.

Pursuant to proceedings, an alternative writ of mandamus was issued out of this court directed to the defendant as Secretary of State, requiring him to make a recount of the signatures signed to an initiative petition, or show cause

why he should not do so. Omitting some matters not pertinent to the issues, the following is a statement of the material facts agreed to by the parties and upon which the issues were made, argued, and submitted:

"That ten per cent of the votes cast for all candidates for governor in the general election in 1936 is 21,523.

"Prior to July 8, 1938, there was presented to the secretary of state the initiative petition, the signatures to which had been affixed and checked, as above described. [i. e. as required by statute]. That four months immediately preceding the November election of 1938 there were less than 21,523 actual signatures on the said petition, there then being approximately 18,000 signatures. Thereafter the secretary of state advised the sponsors of the said petition that there was an insufficient number of names on the petition.

"Subsequent to the date, i. e., four months prior to the general election in November, 1938, additional petition copies were received by the defendant secretary of state from the various county clerks of the state, who had checked the names of registered voters. Prior to the 22nd day of August, 1938, the additional signatures to the petition submitted to the defendant secretary of state would bring the total number of signatures to a number in excess of 22,000.

"On or about August 8, 1938, the defendant secretary of state received the following communication from the plaintiff, to wit:

> " 'Payson, Utah
> " 'August 8, 1938

" 'Hon. E. E. Monson,
" 'Sec. of State of the State of Utah,
" 'Salt Lake City, Utah

" 'I, the undersigned Sponsor for the Direct Legislation for the Home Tax Exemption, hereby demand a recount of the names on the Petition, in the presence of the Sponsor, as delivered to you and now in your possession, in accordance with the law. If there is any deficiency in names, we now offer to make up the deficiency as provided by law.

" 'Yours truly,

" 'KS                    (Signed)   Enos W. Simons, Jr.
" 'Sponsor'

"That on or about August 23, 1938, the plaintiff received from the defendant secretary of state the following communication:

" 'August 23
1938

" 'Mr. Enos W. Simons, Jr.
" '165 South Main Street
" 'Payson, Utah
" 'Dear Mr. Simons:

" 'Under date of July 16, 1938, I addressed a communication to you advising that the Attorney General had ruled that since the sponsors of the proposed homestead exemption law had failed to file on or before July 8, 1938, an initiative petition containing 21,523 signatures of legal voters from a majority of the counties in the State, the Secretary of State was without jurisdiction to proceed further in the matter. A copy of the Attorney General's opinion was transmitted to you with said letter.

" 'Subsequent to July 8, 1938, some 33 petition copies, containing enough additional signatures to bring the grand total of signatures in excess of 22,000 have been presented to my office. Said petition copies have not been filed but are carefully preserved with the original petition copies received in my office on or prior to July 8, 1938.

" 'I am informed that the sponsors have not accepted my communication of July 16, 1938, as a final disposition of this matter. In other words, I have been informed that the sponsors do not regard my communication of July 16, 1938, as a refusal to proceed. In order, therefore, that there can be no misunderstanding about the purpose of my letter of July 16, 1938, please be advised that the statement therein made was intended to advise you that I had accepted the ruling of the Attorney General, and acting upon his advice, I would not accept for filing the petition copies presented or take further action in said matter. It was for that reason that I would not consent to a recount of the signatures as requested in your letter of August 8, 1938, for as I have interpreted the Attorney General's ruling and the law the sponsors are entitled to a recount in their presence only in the event that an initiative petition has been filed as required by Section 25-10-3 of the Revised Statutes of Utah 1933.

" 'I, therefore, reaffirm my original position and desire the sponsors to understand definitely and clearly that until I am told by the Attorney General or the Court that I have authority to proceed in said matter, the petition copies presented will not be accepted for filing and no further action will be taken on my part as Secretary of State.

" 'Very truly yours,
" 'EEM/                              (Signed) E. E. Monson
" 'ch                                        E. E. Monson
                                    " 'Secretary of State'

"The secretary of state has refused and now refuses to count any signatures of legal voters on the said petition submitted to him subsequently to July 8, 1938, for the purpose of making the petition sufficient prior to at least fifty days before November 8, 1938, the date of the general election at which the proposed law is to be submitted to the people for approval or rejection. Additional signatures to the petition have been, and now are in the course of being, presented to the defendant secretary of state from the county clerks, who have checked or now are checking the names of the registered voters."

Section 25-10-3, Revised Statutes of Utah 1933, provides:

"Upon the presentation to the secretary of state, *at any time not less than four months before any general election,* of an initiative petition, signed as herein provided by legal voters equal in number to ten per cent of all the votes cast for all candidates for governor at the next preceding general election at which a governor was elected, proposing a law set forth therein, the secretary of state shall submit the law so proposed to a vote of the people at the next ensuing general election." (Italics added.)

It appears the initiative petition must be presented to the Secretary of State "not less than four months before any general election," and that it must be signed by "legal voters" equal to ten per cent of all votes cast for all candidates for governor at the next preceding general election. By the stipulation of the parties it is agreed and shown that the required number of "legal voters" whose names were upon the petition did not equal 21,523, but that the "actual signatures on the said petition" numbered approximately 18,000. The petition failed on the expiration date provided for filing to submit the required number of signatures, "legal voters" or otherwise.

When a petitioner signs an initiative or referendum petition he is required among other things to declare that he is a "legal voter," and the notary public certifying the petition sheets is also required to certify among other things that each signer is a "legal voter" of the State of Utah. (Rev. St. Utah 1933, Sections 25-10-8 and ■ 25-10-9). We are of the opinion the requirement

that the "legal voters" equal to ten per cent of all votes cast for all candidates for governor is met, in so far as invoking action and requiring the Secretary of State to proceed to determine the sufficiency of the petition by verification of the signatures, sufficiency of addresses, county clerk information, sufficiency as to number of legal voters from each county etc., as required by Sections 25-10-16 and 25-10-17 of Rev. St. Utah 1933, when the petition copies themselves show that the required number of legal voters have signed the petition which must be filed four months before the next ensuing general election. When the total number of signatures contained in the petition does not meet the statutory requirement, upon the expiration date of filing, the petition sponsors have not met the statutory requirement to require the Secretary of State to proceed under the statute. The stipulation indicates there was not a compliance with the statute. Less than 18,000 signatures is not a compliance when 21,523 is the required ten per cent of the votes cast for governor at the next preceding general election. For the purpose of setting in motion further procedure, the petition must be signed by the required number of "legal voters" *as shown by the petition*, notwithstanding some of the signatures may be eliminated because the person was not a registered voter, or for other reasons. Any other construction nullifies the express provision requiring the petition to contain at least ten per cent of the votes cast for all the candidates for governor to be filed four months before the election date fixed by the statute. That the required number may afterward be found to be insufficient for other reasons prescribed by the statute is a matter that may then be remedied by the proceedings provided for in the further sections of the statute.

It is provided, Sec. 25-10-16, supra, that

"After such petition is filed the secretary of state shall forthwith cause the number of verified names appearing on *each* verified circulation sheet to be counted, and, if the number of names so counted equals or exceeds the number of names required by the provisions of *this chapter*, he shall mark upon the front of the petition the word 'sufficient';

if the names *properly signed and verified* do not equal or exceed the number so required, he shall mark on the front thereof the word 'insufficient'." (Italics added.)

The Secretary of State did not determine either the "sufficiency" or "insufficiency" of the petition presented to him for filing. He did not file the petition.

In reply to a demand made by the sponsors of the petition for a "recount of the names on the petition" presented on or before July 8, 1938, the Secretary of State, on August 23, 1938, in a letter addressed to Enos W. Simons, Jr., in part said:

"I am informed that the sponsors have not accepted my communication of July 16, 1938, as a final disposition of this matter. In other words, I have been informed that the sponsors do not regard my communication of July 16, 1938, as a refusal to proceed. In order, therefore, that there can be no misunderstanding about the purpose of my letter of July 16, 1938, please be advised that the statement therein made was intended to advise you that I have accepted the ruling of the Attorney General, and acting upon his advice, I would not accept for filing the petition copies presented or take further action in the matter. It was for that reason that I would not consent to a recount of the signatures as requested in your letter of August 8, 1938, for as I have interpreted the Attorney General's ruling and the law, the sponsors are entitled to a recount in their presence only in the event that an initiative petition has been filed as required by Section 25-10-3 of the Revised Statutes of Utah, 1933."

"In order to make any such petition mandatory [upon the Secretary of State] a majority of all the counties of the state must each furnish signatures of legal voters not less in number than the percentages," required by the statute. Sec. 25-10-1, Rev. St. Utah 1933.

The statute also provides that:

"The secretary of state shall inform any person making inquiry in regard thereto of the number of votes cast for governor in the next preceding general election at which a governor was elected, as the same appears from the official canvass of such election." Rev. St. Utah 1933, Sec. 25-10-7.

Sources of information are available so that petition sponsors of an initiative or referendum petition can readily de-

termine for themselves whether the petition contains the necessary number of signatures of those who are "legal voters" as required to be shown by the petition. If the petition at the time it is presented for filing does not, it is not entitled to be filed—nor is the action of the Secretary of State invoked to proceed unless it does. If, however, the requisite number of signers are, as shown by the petition, "legal voters," then the Secretary of State must proceed to determine the sufficiency of the petition as measured by the other requirements, viz., county distribution, registration as shown by the county clerks' certificates, residence, addresses, and other matters provided by the statute; many of which were discussed and pointed out in the case of *Halgren* v. *Welling*, 91 Utah 16, 63 P. 2d 550. This makes it possible for the Secretary of State to comply with the proviso of Section 25-10-17, Rev. St. Utah 1933:

"provided, that nothing in this chapter shall be construed to require the secretary of state to have the title of any proposed law for initiation, or the number of any measure for referendum, printed on the official ballot, unless a sufficient petition as herein provided shall have been filed in his office at least fifty days before any general election at which the proposed law or measure is to be submitted."

Petitioners having failed to present to the Secretary of State a petition not less than four months before the general election, signed by the required number of legal voters as prescribed by Sec. 25-10-3, Revised Statutes of Utah, 1933, the petition for a writ of mandamus must be and accordingly is denied. The alternative writ heretofore issued is recalled and quashed.

Defendant to recover costs.

FOLLAND, C. J., and HANSON, WOLFE, and LARSON, JJ., concur.